IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARLON OLIPHANT, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION |
| | : NO. 03-3493 |
| JO ANNE B. BARNHART, | : |
| COMMISSIONER OF | : |
| SOCIAL SECURITY, | : |
| | : |
| Defendant. | : |

Giles, C.J.                                                                                                               August 11, 2005

## MEMORANDUM

Marlon Oliphant brings this action under 42 U.S.C. § 405(g), seeking reversal of the final decision of the Commission of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1382f. The parties have filed cross-motions for summary judgment. Both are denied. Because the Administrative Law Judge ("ALJ") did not consider all of the medical evidence and did not give appropriate weight to the opinions of plaintiff's treating physicians, this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

## Factual and Procedural Background

On March 17, 1999, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f (2004). He was 41 years old at the time of the alleged onset of his disability, and has a high school education. His work experience included exertionally light and unskilled work as a maintenance

1

worker between 1983 and 1987, and a kitchen helper between 1988 and 1991. Plaintiff's income since has been from public assistance, including food stamps and medical care. (R. 36, 181.) He alleged a disability as of February 1, 1999 due to human immunodeficiency virus (HIV) infection and depression.

Plaintiff's claim was denied on July 29, 1999, and following an appeal, was denied again on October 29, 1999. On November 16, 1999, plaintiff filed a request for a hearing with an Administrative Law Judge ("ALJ"), and obtained counsel several months later. An administrative hearing took place on April 4, 2000, and the ALJ denied plaintiff SSI benefits on May 18, 2000. The ALJ's found that plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability; that his HIV infection and depression were not severe based on the requirements of 20 CFR § 416.920(b); that his impairments did not meet or medically equal one of the listed impairments in the regulations; that claimant's allegations regarding his limitations were not totally credible; that he was limited to the performance of routine tasks; that claimant's past relevant work did not require the performance of work-related activities precluded by his residual functional capacity; that his impairments did not prevent him from performing past relevant work experience, and that claimant was not under a disability as defined by the Social Security Act. (R. 22-23).

Plaintiff appealed, and on February 14, 2002, the Appeals Council ("AC") affirmed the decision of the ALJ. Plaintiff filed an appeal before this court in June 2003. An interim SSI disability application filed by plaintiff in October 2003 was approved. Now, plaintiff asks this court to remand the Commissioner's adverse decision of May 18, 2000 which denied benefits from his March 17, 1999 protective filing date, through September 30, 2003, the day before he

filed his subsequent SSI disability application. In addition, plaintiff requests that defendant schedule a supplemental hearing for the purpose of allowing testimony by an ALJ-selected medical expert, and additional vocational testimony.

## Medical Evidence and History

On August 25, 1998, Dr. M. Cooper treated plaintiff and reported that he suffered from low back pain and insomnia. (R. 140.) Plaintiff was admitted for fiberoptic bronchoscopy[1] on February 22, 1999 with a pre-operative diagnosis of pneumocystis carinii versus TB. (R. 210.)[2] After experiencing increased shortness of breath, plaintiff was hospitalized at Mercy Hospital of Philadelphia for eight days in March 1999, where he was diagnosed with acquired immunodeficiency syndrome (AIDS) and possible PCP pneumonia, and secondarily diagnosed with oral candidiasis, hypnonatremia, anemia and diarrhea. (R. 145.) Plaintiff showed significant bilateral pulmonary infiltrates in his lungs. (R. 141, 147.) Plaintiff's needs disability form listed his prescribed medications as Epivir, Bactrim, Crixivan, Zovirax, Compazine, Zantac, Ziagen and Polyhistine DM. (R. 138.) He complained of constant fatigue throughout his body.

---

[1]Bronchoscopy is "an examination used for inspection of the interior of the tracheo-bronchial tree, performance of endobronchial diagnostic tests, taking of specimens for biopsy and culture and removal of foreign bodies." On-line Medical Dictionary, *available at* http://cancerweb.ncl.ac.uk/cgi-bin/omd?query=bronchoscopy&action=Search+OMD

[2]Pneumocystis carinii is defined as "a pneumonia that affects individuals whose immunological defenses have been compromised by malnutrition, by other diseases (as cancer or AIDS), or by artificial immunosuppressive techniques (as after organ transplantation), that is caused by a microorganism of the genus Pneumocystis (P. carinii) which shows up in specially stained preparations of fresh infected lung tissue as cysts containing six to eight oval bodies, and that attacks especially the interstitium of the lungs with marked thickening of the alveolar septa and of the alveoli." Medical Dictionary, *available at* http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=pneumocystis+carinii+pneumonia

(R. 117-18.)  The fatigue interfered frequently with his ability to get around outside his home and perform recreational activities.  (R. 119.)  Plaintiff also offered the fatigue interfered with hygiene activities of bathing and dressing, getting around in his home, shopping, meal preparation, using public transportation and concentration.  (R. 118-19.)

In April 1999, Craig S. Carter, M.D., F.A.C.S., of Mercy Hospital reported that plaintiff underwent therapy for the bilateral pulmonary infiltrates and was improving. (R. 141.)  James McMaster, M.D., reported in July 1999 that "there has been marked improvement of bilateral pulmonary parenchymal infiltration since the last examination."  (R. 212.)

A medical progress report of April 13, 1999 listed plaintiff's problems "mouth sore, feet swelling x 12 days" and "pedal edema bilat[eral]."  (R. 137.)  Defendant's consultant, Alfred M. Sellers, M.D., evaluated plaintiff on May 11, 1999.  (R. 165-67.)  He noted the following:

> "Mr. Oliphant had smoked one pack a day until his current HIV problem and now smokes only an occasional cigarette.  He has given up alcohol and drugs.  He does experience occasional nausea and vomiting which he relates to his current condition...Mr. Oliphant is only 41 years old; his goal in life is to become a chef.  Of course he is quite emotional about his problem with AIDS and is therefore not making decisions about employment. (R. 165-66.)

Dr. Sellers assessed plaintiff's ability to perform work related activities, and opined that plaintiff could lift and carry two to three pounds frequently, and ten pounds frequently.  (R. 167.)[3]  Dr. Sellers also opined that plaintiff's capacity for standing and walking in an 8-hour day was one hour or less.  (Id.)  He reported that plaintiff had no limitations on sitting, pushing and pulling, or other physical functions, had frequent ability with regard to postural activities, but that he was affected by temperature extremes (cold) and humidity. (R. 168.)

On July 24, 1999, a state agency, non-examining physician reviewed plaintiff's records

---

[3]This appears to be an inconsistency in Dr. Sellers' report.

4

and concluded, without an explanation of methodology, that plaintiff had the capacity to perform light work. (R. 169-176.) The physician opined that plaintiff could lift ten pounds frequently, and lift twenty pounds occasionally. (R. 170.)

In his Reconsideration Disability Report of August 11, 1999, plaintiff stated that his HIV medicine caused leg pain and stiffness in the joints. (R. 129.) With regard to any physical limitations experienced since he filed his claim, plaintiff stated, "I can't move very fast. I must sit down and get up slowly." (Id.) Plaintiff stated that he was then able to care for himself, but he was unable to lift heavy objects, and needed help with shopping and laundry. (R. 131.) Bending over and going up and down stairs made him dizzy. (Id.) Plaintiff also stated that he was very depressed, had feelings of hopelessness, and had been told by his physician not to work. (R. 129.)

Annette Jadus, M.A., of Action, Incorporated, prepared a vocational report of August 26, 1999. (R. 177-80.) She concluded that plaintiff required close medical management for his AIDS condition, and that his condition satisfied the criteria of the §14.08 Listing of Impairments. Further, the report referenced Dr. Randall Snyder, who had reviewed plaintiff's Social Security records, and had concluded that plaintiff retained no residual functional capacity. (Id.) Action, Incorporated opined that plaintiff was "currently unfit and unable to perform any substantial gainful activity." (R. 180.) Defendant contends that since Ms. Jadus is not a physician, she was unqualified to assess plaintiff's HIV condition. (Def.'s Br. Opp. Sum. J. at 5.)

By October 1999, Dale I. Lehrfeld, Ph.D., psychologist, had examined plaintiff. (R 181-87.) He diagnosed plaintiff with dysthymic disorder and substance abuse, and noted a deterioration in his mental and emotional condition since the HIV diagnosis. (R. 187.) Dr.

5

Lehrfeld concluded that, given his decreased energy level and need for rest periods, it would be difficult for plaintiff to maintain regular attendance, punctuality and work schedules at any job. (R. 187.)

However, on October 20, 1999, Roger K. Fretz, a non-treating, non-examining state psychologist reviewed plaintiff's records and concluded that plaintiff was able to work, although he could perform only routine tasks. (R. 197-99.) He opined that plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions, could maintain concentration over extended periods, complete a normal workday and workweek even with psychologically-based symptoms and could perform at a consistent pace without an unreasonable number and length of rest periods. (Id.) Although he concluded that plaintiff had severe depression, in his opinion, it did not satisfy the Listing of Impairments. (R. 188-96.)

Psychotherapy progress notes from Kenneth McAuliffe, MSW, dated November 30, 1999, described plaintiff as having chest pains, numbness in legs, abdominal pain, and dizziness when walking upstairs. (R. 207.) Plaintiff also expressed fear of imminent death, and on-going grief over his father's death. (Id.)

On January 12, 2000, Dr. James C. McMaster, DO,[4] examined plaintiff and found him to have general fatigue, and decreased sensation in his right lateral leg. (R. 216.) He noted on February 9, 2000 numbness in plaintiff's right leg, advanced AIDS, and hallucinations. (R. 215.)

At an outpatient medical appointment on March 7, 2000, Dr. William Swiggard, MD, reported that plaintiff complained of low energy for the previous six months. (R. 220.) Dr. Swiggard characterized plaintiff as depressed, with neuropathy of the right leg (numbness, pain,

---

[4]Doctor of Osteopathy

6

and tingling hot and cold sensations) since September 1999. (Id.) The physician noted plaintiff's blurry vision, raised skin lesions and marks on his back. (Id.)

At the hearing before the ALJ, plaintiff testified that he was seeing a therapist twice a month took medication to cope with his depression, but sometimes could not make a medical appointment because he was not up to it. (R. 44-46.) He also complained of insomnia, dizziness and breathing difficulties, claimed to hear voices, had hallucinations and had suicidal ideation. (R. 46-48.)

Dr. Steve Gunderman, a vocational expert, classified plaintiff's past relevant work as light and unskilled, and opined that plaintiff could perform his past work. (R. 50.)

### Review of ALJ Decision

#### A. Standards for Determining Disability

For eligibility of supplemental security income under Title XVI of the Social Security Act, a claimant must meet the Act's definition of "disabled." See 42011 U.S.C. §§ 1381-1383f (2004). An individual is disabled if a physical or mental impairment[5] prevents the person from engaging in substantial gainful activity, and the impairment is "of such severity[6] that he is unable to do his previous work and cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exist in the national economy. 42 U.S.C. § 1382c(a)(3)(B) (2004).

---

[5] A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D) (2004).

[6] To be severe, an impairment must "be expected to result in death or . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. § 416.909 (2005).

To determine whether a plaintiff is disabled, an ALJ must follow a five-step sequential analysis set out in 20 C.F.R. § 404.1520. To prevail under the five-step analysis a claimant must establish that 1) he is not currently engaging in "substantial gainful activity," as defined in the regulations; 2) that he suffers from a "severe impairment," 3) that his disability meets or equals an impairment listed in 20 CFR Pt. 404, Subpt. P. App. 1 (Listing of Impairments);[7] 4) that he does not have sufficient residual functional capacity to perform her past relevant work;[8] and at the final step – 5) the burden shifts to the Commissioner to show that the claimant can perform 'other work.'[9] See Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002).

Under Step One, the ALJ concluded that plaintiff had not engaged in substantial gainful employment since the onset of his disability. (R. 22.) The ALJ then considered plaintiff's impairments, and in Step Two found that plaintiff's HIV infection and depression were severe. (R. 23.) At Step Three, the ALJ held that plaintiff's impairments did not meet or equal those in the listings. (Id.) At Step Four, the ALJ determined that plaintiff's past relevant work as a kitchen helper and maintenance worker did not require work precluded by his residual functional capacity, and his impairments did not prevent him from performing his past relevant work. (Id.)

---

[7] See 20 C.F.R. § 416.920(d). If the impairment meets or equals a listed impairment, the claimant is considered disabled per se and the evaluation process ends. Plummer, 186 F.3d at 428. If, however, the claimant's impairments do not satisfy step three, the claimant must continue on to step four.

[8] 20 C.F.R. § 416.920(e). Residual functioning capacity is defined as "what a [claimant] can still do despite his limitations." 20 C.F.R. § 416.945(a). If the claimant does not demonstrate his inability to do past relevant work, he will not be considered disabled. If he does, the inquiry moves to step five.

[9] 20 C.F.R. § 416.920(f). "Other work" must consist of jobs that exist in significant numbers in the national economy that the claimant can perform given his age, education, past work experience, and residual functional capacity. Plummer, 186 F.3d at 428.

The ALJ further concluded that plaintiff's allegations regarding his limitations were not totally credible; his ability to perform the full range of light work was diminished by his moderately limited abilities regarding understanding, remembering and carrying out detailed instructions and concentration; and plaintiff was limited to the performance of routine tasks. (R. 21.)

**B. Standard of Review**

When reviewing a Commissioner's denial of a claimant's application for disability benefits, a district court must determine whether the findings are supported by substantial evidence in the record. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). See also 42 U.S.C. § 405(g) (2004) and 42 U.S.C. § 1383©)(3) (2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987)). Furthermore, the third circuit has suggested, "[i]t is less than a preponderance of the evidence but more than a mere scintilla." Jesurum, 48 F.3d at 117 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). Evidence is not substantial if it is a single piece of evidence with an unresolved conflict with other evidence, is overwhelmed by other evidence, or it is merely a conclusion rather than supporting evidence. Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

Plaintiff alleges that the ALJ's denial of his claim was in error because the finding that his medical impairments were not severe were not supported by substantial evidence. Specifically, plaintiff alleges that 1) the ALJ failed to properly evaluate the Step Three listing issue; 2) the functional conclusions of the state agency's non-examining, physical checklist are not substantial evidence at Steps Four and Five; 3) the ALJ's conclusions about the psychiatric

9

status of plaintiff are not consistent with his residual functional capacity assessment; 4) defendant has presented no evidence to support the conclusion that claimant's past relevant work still exists at the light exertional level; and 5) vocational testimony premised upon an inadequate ALJ hypothetical is not substantial evidence justifying benefit denial.  In moving for summary judgment, he seeks to have the matter remanded for a supplemental hearing for testimony by a medical expert appointed by defendant, and additional vocational testimony regarding the closed period at issue.  Defendants also moved for summary judgment, seeking an order affirming the denial of benefits on the grounds that substantial evidence supported the ALJ's finding that plaintiff was not disabled.  Since the court finds that the ALJ's decision was not based on substantial evidence, the case is remanded so that the ALJ can fully account for all pertinent medical record entries and give appropriate weight to the opinions of plaintiff's treating physicians.

The regulations provide that "any individual with HIV infection, including one with a diagnosis of acquired immunodeficiency syndrome (AIDS), may be found disabled under this listing if his or her impairment meets any of the criteria in 14.08 or is of equivalent severity to any impairment in 14.08." 20 C.F.R., Pt. 404, Subpt. P, App. 1, 14.00(D)(1).  Therefore, Social Security benefits are not available for a claimant with positive HIV status unless it is accompanied by one of various related disorders listed under 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 14.08(A) - (N).  For example, Section 14.08(I) provides:

> HIV wasting syndrome, characterized by involuntary weight loss of 10 percent or more of baseline (or other significant involuntary weight loss, as described in 14.00D2) and, in the absence of a concurrent illness that could explain the findings, either:
> 1. Chronic diarrhea with two or more loose stools daily lasting for 1 month or longer; or

> 2. Chronic weakness and documented fever greater than 38° C (100.4° F) for the majority of 1 month or longer.

20 C.F.R. pt. 404, subpt. P, app. 1, § 14.08(I).

### 1. The ALJ's Evaluation of the Step Three Listing Issue is Not Supported by Substantial Evidence

In his decision, the ALJ made the following conclusion:

There is no indication that the candidiasis, a fungal infection claimant suffered during the March 1999 hospitalization, was located anywhere other than his mouth. The record does not indicate that diarrhea was of a chronic nature or severity as described in the listing. Based on these facts, claimant's HIV infection does not meet or medically equal the listed impairment, lacking is the requisite opportunistic infection or aggravating condition as enumerated in the text of the Listing. (R. 19.)

The ALJ did not consider the assessment of plaintiff's treating physicians when making his findings. Therefore, the ALJ's decision is not based upon substantial evidence.

In determining that plaintiff's AIDS condition did not constitute a disability, the ALJ ignored the reports of Dr. McMaster who noted on January 12, 2000, and on February 9, 2000, that plaintiff had a number of problems in addition to his advanced AIDS. These included fatigue, numbness in his right leg, and hallucinations. Further, the ALJ disregarded the March 7, 2000, report by Dr. William Swiggard, who characterized plaintiff as depressed, with low energy, numbness, pain, tingling hot and cold sensations, blurry vision, right leg neuropathy, and skin lesions and marks on his back. Although the ALJ stated that Dr. Swiggard recommended further testing for the neuropathy and skin lesions, and that the record contained no additional information concerning the findings. (R. 21.) The fact is that these objectively determined conditions cannot be ignored in assessing present disability. Rejecting plaintiff's symptomology as founds and recorded by his treating physicians through their medical reports (including

11

fatigue, bloating, constipation, diarrhea, nausea and vomiting, dizziness, numbness of the leg and difficulty concentrating), noting a period of weight gain by plaintiff, and citing a mild CD4 (cellular immune deficiency) count of 424 on July 16, 1999, the ALJ, without a rational basis, concluded that plaintiff was exaggerating, and that his condition was not severe enough to preclude work activities. (R. 20-21) Indeed, in rejecting plaintiff's individual symptoms, such as diarrhea, as lacking severity as described in the listing, and citing a lack of aggravating conditions, the ALJ failed to assess the evidence of plaintiff's HIV symptoms with regard to listing § 14.08N:

> N. Repeated (as defined in 14.00D8) manifestations of HIV infection (including those listed in 14.08A-M, but without the requisite findings, e.g., carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08J, or other manifestations, e.g., oral hairy leukoplakia, myositis) resulting in significant, documented symptoms or signs (e.g., fatigue, fever, malaise, weight loss, pain, night sweats) and one of the following at the marked level (as defined in 14.00D8):
> 1. Restriction of activities of daily living; or
> 2. Difficulties in maintaining social functioning; or
> 3. Difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1, § 14.08(N).

Further, the ALJ failed to evaluate the combined effect of plaintiff's impairments. In his decision the ALJ was unable to decide whether some of plaintiff's limitations were due to his HIV infection or depression:

> A review of the record supports the presence of anhedonia, sleep disturbance, decreased energy and difficulty concentrating, suicidal ideations and audio hallucinations (Exhibits 6F and 10F). Although these findings are indicated it is questionable whether the anhedonia, sleep disturbance, decreased energy and difficulty concentrating are a result of depression or secondary to his HIV infection and corresponding treatment or some other cause. Claimant's testimony supported this thought as he indicated that his limitations were more from his HIV infection and the effects of treatment than his depression. Moreover, claimant had

12

recently experienced the deaths of some close family members, and the grieving process no doubt affected his depression. (R. 19.)

In evaluating Step Three in such a manner, the ALJ misapplied the Social Security regulations. The applicable regulations state that in determining whether a claimant's impairment or impairments are sufficiently severe for eligibility, "we will consider the combined effect of all of your impairments without regard to whether such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. The ALJ, by failing to take into account the totality of claimant's full-blown AIDS and depression, relied on an inadequate method to assess disability. The ALJ concluded that "additional evidence may be instrumental in substantiating claimant's allegations (R. 22.)," yet did not consider all of the evidence in the record, and improperly evaluated the evidence that he did consider.

**2. The ALJ's Evaluation of the Step Four and Step Five Listing Issues is Not Supported by Substantial Evidence**

In determining plaintiff's ability to perform his past work, the ALJ relied upon the testimony of Dr. Steve Gunderman. The ALJ posed a faulty hypothetical question to Dr. Gunderman:

> ALJ: For the hypothetical let's assume that we have a man who is the same age, education, and work experience as Mr. Oliphant. Perform light work as identified in Exhibit 4F and is moderately limited in the following [INAUDIBLE]. The ability to understand, remember, and carry-out detailed job instructions, maintain attention and concentration for extended periods of time, complete a normal workday or work week without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number or length of rest periods, and would be able to perform routine jobs....All right, with those limitations, Dr. Gunderman, can he perform his past work?
> VE: The person could perform the work that I described, yes. (R. 50-51.)

Plaintiff properly complains about Dr. Gunderman's testimony because the ALJ's hypothetical

did not adequately capture the treating physician's findings of plaintiff's mental impairments and depression, and the physical limitations caused by those impairments.  See Ramirez v. Barnhart, 346 F.3d 546 (3d Cir. 2004).

The ALJ did not discuss the October 1999 report of Dr. Lehrfeld, who examined plaintiff and concluded that his decreased energy level and frequent rest periods due to HIV and depression would make work difficult for him.  In addition, the ALJ omitted consideration of the November 30, 1999 psychotherapy report of Kenneth McAuliffe, who noted plaintiff's fear of dying, and Dr. Sellers' May 11, 1999 report, which noted that plaintiff was emotional about his AIDS illness and was not making decisions about employment.  Further, the ALJ did not consider either Dr. Swiggard's report, which discussed plaintiff's depression, or other relevant mental health records.

Moreover, the ALJ did not rely on substantial evidence in concluding that claimant's past relevant work still exists at the light exertional level, and that his AIDS and depression would not prevent him from performing his past work.  The ALJ accepted the October 20, 1999 report by a non-treating, non-examining state agency consultant who did not have the benefit of plaintiff's mental health counseling notes, and concluded that plaintiff's mental impairment did not satisfy the Listing of Impairments.  (R. 19-20.)  The ALJ also credited a non-treating physician's July 24, 1999 assessment of claimant's non-residual capacity, which concluded that plaintiff maintains the ability to work up to the light exertional level.  (R. 21.)  The ALJ rejected the vocational report of Action, Incorporated, which concluded that claimant's past relevant work as a kitchen helper was unskilled at a medium exertional level, and that his HIV infection equals the criteria of Listing 14.08.  (Id.)

The ALJ rejected some of the evidence from non-examining, non-treating health professionals, but rejected all evidence from treating and examining physicians regarding plaintiff's lack of capacity to work.  Without considering evidence of the effects of depression on plaintiff, who also has full-blown AIDS, the ALJ erroneously concluded that plaintiff was indifferent towards treatment, and that plaintiff's statements about his limitations could not be credible.

**3. A Hearing Shall be Held to Determine the Admissibility of Dr. McMaster's Report**

Dr. McMaster's report of January 12, 2000, entitled "Medical Report on Adult with Allegation of Human Immunodeficiency Virus (HIV) Infection," which was completed using defendant's form SSA-4814-F5(8-93), was not included in the court record.  Plaintiff has introduced the evidence in the brief in support of his motion for summary judgment.  (Pl. Br. Mot. S.J. Exh. B.)  In that report, Dr. McMaster diagnosed plaintiff with a host of diseases and afflictions, including pneumocystis carinii pneumonia or extrapulmonary pneumocystis carinii infection" under the "fungal infections" category; anemia, granulocytopenia and thrombocytopenia under the "hematologic abnormalities" category; "other neurological manifestations of HIV infection (e.g., peripheral neuropathy), with significant and persistent disorganization of motor function in 2 extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station," HIV wasting syndrome (10 percent or more weight loss, chronic diarrhea, chronic weakness fever and fever greater than 38°C/100.4°F for the majority of a month or longer) and "diarrhea, lasting for 1 month or longer, resistant to treatment, and requiring intravenous hydration, intravenous alimentation, or tube feeding."  Id.  Dr. McMaster also noted plaintiff's marked restriction of activities of daily living, including lifting

heavy objects and numbness in leg, and marked difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace (depression). Id.

Plaintiff reveals that Dr. McMaster's submission was sought and obtained by defendant's contracted state agency, and assessed that defendant's failure to include it in the record constitutes an abuse of discretion. (Pl. Rep. Def. Cr. Mot. S.J. at 2-3.) Defendant argues that plaintiff's counsel should have contacted defendant's Office of General Counsel prior to the filing of briefs with this court. Defendant also asserts that plaintiff has not shown that he satisfies the Matthews test for incorporation of extra-record evidence. (Def.'s Br. Opp. Sum. J. at 7-8.)

Under Matthews, the court can remand a case when there is extra-record evidence that is both new and material, and there is good cause for the failure to incorporate such evidence into the record of the prior proceeding. Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001). The court finds that Dr. McMaster's report satisfies all Matthews criteria, requiring remand for a hearing to determine its relevancy and value for determination of plaintiff's claim.

## Conclusion

For all foregoing reasons, this matter is remanded for ALJ reconsideration of the enlarged record and a new decision.

An appropriate order follows.